# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN ROSS MIALE,<br><br>    Plaintiff,<br><br>  v.<br><br>TUOLUMNE COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>    Defendants.<br>               / | CASE NO. 1:06-cv-01483-AWI-YNP PC<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 1)<br><br>RESPONSE DUE WITHIN 30 DAYS |

  Plaintiff Martin Ross Miale ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation. However, the events in Plaintiff's complaint appear to have taken place before his incarceration. Plaintiff is suing under section 1983 for the violation of his constitutional rights. Plaintiff also claims that Defendants violated the Posse Comitatus Act (18 U.S.C. § 1385). Plaintiff names Richard Rogers, Lee Stanford, Craig Davis, Todd Blankenship, George Ruckman, Jim Earl, Dan Bressler, Lt. Ditbetter, Zack Gordon, Jeff Gimpler, Jim Mele, A. J. Ford, P. T. Jones, Ken Austin, Tom Shepard, Bernie Roberts, and Donald I. Segerstrom as defendants. For the reasons set forth below, Plaintiff is ordered either to notify the Court of his willingness to proceed only on the claims found to be cognizable in this order, or to file an amended complaint.

///

///

I.      **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

II.     **Background**

Although Plaintiff is currently a prisoner in the custody of the California Department of Corrections and Rehabilitation, Plaintiff's complaint appears to describe events that occurred before Plaintiff was incarcerated. Plaintiff alleges that he was retaliated against by employees of the Tuolumne County Sheriff's Department. Plaintiff alleges that Bruce Wood Medina was killed by

employees of the Tuolumne County Sheriff's Department and a monument was erected by his family and friends stating that his death was caused by "cowards" of the Tuolumne County Sheriff's Department. The monument reads:

> This Monument is Dedicated to
> Bruce Wood Medina
> Born Dec. 31, 46
> Killed Feb. 07, 91
> On this Location, While Unarmed &
> Standing on His Own Property
> Bruce Wood Medina was Shot & Killed
> by the Coward, Scott Mcfee and/or
> other Cowards of the Tuolumne
> County Sherriff[sic] Department
> This Crime was then White-Washed
> by the California Deprtment[sic]
> of Justice

(Compl. 23.) The monument stands on Plaintiff's property. Plaintiff alleges that he is frequently pulled over by officers from the Sheriff's Department who urge Plaintiff to remove the monument from his property.

Plaintiff alleges that sometime in February 2005, Defendant Davis concocted a story that Plaintiff was armed with automatic weapons and explosives, and was dealing drugs throughout the foothills. On March 4, 2005, a search warrant was issued against Plaintiff. On March 14, 2005, the Tuolumne County Sheriff's Department "activated" the California National Guard. Members of the California National Guard dressed in ghillie suits, armed themselves with sniper rifles and machine guns, and positioned themselves around Plaintiff's property. These California National Guard members, along with local law enforcement personnel, executed the search warrant around 6:30 a.m. on Plaintiff's property. Plaintiff alleges that there were over 30 armed men "running amuck" on his property.

Plaintiff alleges that the armed military and law enforcement officials surrounded Plaintiff's puppy yelling incoherently. Plaintiff, who had been preiviously injured in a car wreck, limped toward the armed men waiving his arms and yelling "Don't shoot, don't shoot, he is just a puppy." The armed men then turned their guns toward Plaintiff and continued screaming incoherently. A California National Guard armored personnel carrier loaded with additional men then "came flying into" Plaintiff's property, nearly hitting Plaintiff. A military helicopter also dropped from the sky,

"armed with what looked to be a 50 caliber machine gun" pointing at Plaintiff. Plaintiff attempted to get down on the ground, but had difficulty due to injuries in his leg. One of the California National Guardsmen approached Plaintiff, drove Plaintiff face first into the concrete, and twisted Plaintiff's arm behind his head, causing Plaintiff's shoulder to crack. Plaintiff also felt another person stomping on his legs. Another person climbed on Plaintiff's back, told Plaintiff to calm down, and popped his shoulder back into place.

Plaintiff alleges that he was then handcuffed and placed on a rock while other men ran around on his property waving their machine guns yelling incoherently, unnecessarily kicked down doors that were unlocked, and destroyed Plaintiff's property. Plaintiff was then placed under arrest for a parole violation and taken to Tuolumne General Hospital for treatment for his shoulder injury. Plaintiff received an x-ray but did not receive any treatment because Plaintiff was told the injury would heal itself over time. Plaintiff was also told that an MRI would be necessary to tell what the "real" damage was, but Plaintiff did not receive an MRI.

While in the county jail, Plaintiff was told by two employees of the Tuolumne County Sheriff's Department that people were going to Plaintiff's property to steal his property. An officer (Mcneil) told Plaintiff that they had received information about the people on his property but are choosing not to stop them. A second officer (Derocha) told Plaintiff that the same people are on Plaintiff's property pulling the motor out of Plaintiff's truck but the Sheriff's department was refusing to stop the crimes from occurring because of the monument in front of Plaintiff's property. The truck ended up being stolen and not recovered despite Plaintiff's efforts to notify the sheriff's department and the district attorney (Defendant Segerstrom). Plaintiff alleges that someone stole another car off Plaintiff's property as well as over $30,000 worth of property while Defendant Blankenship watched from across the street.

Plaintiff alleges that Officer Derocha gave Plaintiff a hint about where his property was stolen after the sheriff arrested the thief and told Plaintiff to take care of it himself. Plaintiff asked why they did not prevent the crime from happening and was told that he had nothing coming unless "we could work a deal." (Compl. 12.)

///

### III. Discussion

#### A. Constitutional Claims

Plaintiff claims that Defendants violated his constitutional rights. Plaintiff does not specify which constitutional rights Defendant violated, nor does Plaintiff specify how Defendants violated those rights. Plaintiff merely sets forth the facts of his claims and concludes that Defendants generally violated his constitutional rights and the Posse Comitatus Act, see discussion infra Part III.B. Plaintiff does quote the Fourteenth Amendment in his complaint. (Compl. 13.) Plaintiff does not specifically allege that Defendants violated the Fourteenth Amendment, how Defendants violated the Fourteenth Amendment, or whether Plaintiff is attempting to state a claim under the Due Process Clause of the Fourteenth Amendment or the Equal Protection Clause of the Fourteenth Amendment.

Liberally construed, Plaintiff's claims are most properly analyzed as violations of the First Amendment (for retaliation against his exercise of his right to free speech) and the Fourth Amendment (for the unreasonable destruction and seizure of his property).

#### 1. First Amendment

Plaintiff alleges that Defendants retaliated against him because of the monument erected on his property that criticized the Tuolumne Sheriff's Department. "To demonstrate retaliation in violation of the First Amendment, [a plaintiff] must ultimately prove first that [the defendants] took action that 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Skoog v. County of Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (quoting Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999)). Second, "[plaintiff] must ultimately prove that [the defendants'] desire to cause the chilling effect was a but-for cause of the defendants' action." Id.

Plaintiff here alleges that he engaged in constitutionally protected speech by displaying a monument on his property criticizing the activities of the Tuolumne Sheriff's Department. Plaintiff further alleges that Defendants fabricated a story to obtain a search warrant against Plaintiff, conducted "war games" on Plaintiff's property while executing the search warrant, destroyed his property, and allowed third parties to steal his property – all in retaliation against Plaintiff's speech.

///

Plaintiff states a cognizable claim for retaliation against the exercise of his First Amendment rights against Defendants who retaliated against him.

Plaintiff alleges that Defendant Craig Davis used false information in order to obtain the search warrant against Plaintiff. Plaintiff alleges that Davis concocted a story in order to obtain a search warrant to harass Plaintiff in retaliation for the monument on his property. Plaintiff states a cognizable claim against Defendant Davis for retaliating against Plaintiff's exercise of his First Amendment rights.

Plaintiff alleges that Defendant Todd Blankenship authored affidavits for the purpose of obtaining the search warrants against Plaintiff. Plaintiff also alleges that Blankenship was responsible for the destruction of Plaintiff's property, including the theft of Plaintiff's dog. Plaintiff also alleges that Blankenship knowingly allowed third parties to steal Plaintiff's property by having knowledge of the crime as it was occurring and deliberately refusing to prevent it. Plaintiff also alleges that Blankenship left a gate on Plaintiff's property open to allow others to enter and steal Plaintiff's property. Plaintiff alleges that Blankenship did so in retaliation for the monument on Plaintiff's property. Plaintiff states a cognizable claim against Defendant Blankenship for retaliating against Plaintiff's exercise of his First Amendment rights.

Plaintiff also identifies a number of the officials that harassed Plaintiff by conducting "war games" on Plaintiff's property. Plaintiff alleges that Defendants Jim Earl, Dan Bressler, Lt. Ditbetter, Zack Gordon, Jeff Gimpler, Jim Mele, and A. J. Ford, were law enforcement officials from the Sheriff's Department that participated in the execution of the search warrant on Plaintiff's property on March 14, 2005. Plaintiff alleges that during the execution of the search warrant, officials unreasonably and unnecessarily destroyed Plaintiff's property in retaliation for the monument on his property. Plaintiff alleges that Defendants Ken Austin and Tom Shepard were California Highway Patrol officers that worked in concert with Defendant Blankenship in the execution of the search warrants against Plaintiff. Plaintiff alleges that they cut locks off buildings, kicked down doors, broke hinges and welds on Plaintiff's property even after Plaintiff offered the combination to the locks. Plaintiff alleges that Defendant Bernie Roberts was a parole officer that participated in playing "war games" on Plaintiff's property during the execution of the search

warrant on March 14, 2005.  Plaintiff states cognizable claims against Defendants Earl, Bressler, Ditbetter, Gordon, Gimpler, Mele, Ford, Austin, Shepard and Roberts for retaliating against Plaintiff's exercise of his First Amendment rights.

### 2. Fourth Amendment

Plaintiff alleges that during the execution of the search warrant, law enforcement and military officials ransacked his property by knocking down unlocked doors and destroying property. "Officers executing a search warrant occasionally 'must damage property in order to perform their duty.'" Liston v. County of Riverside, 120 F.3d 965, 979 (9th Cir. 1997) However, "unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment." Id.

Plaintiff thus states a cognizable Fourth Amendment claim against Defendants who executed the search warrant in an unreasonable manner by wantonly destroying his property.  Plaintiff alleges that law enforcement and military officials unnecessarily kicked down doors that were unlocked. see Mena v. City of Simi Valley, 226 F.3d 1031, 1041 (9th Cir. 2000) (finding police officers' actions in breaking down doors that were already unlocked was not reasonably necessary to execute the search warrant).  Plaintiff also alleges that Defendant Blankenship stole Plaintiff's dog based on his statement during the execution of the search warrant ("It sure would be sad if this dog were to come up missing") and the fact that the puppy would later come up missing. (Compl. 9.)  Plaintiff states a cognizable Fourth Amendment claim against Davis, Blankenship, Earl, Bressler, Ditbetter, Gordon, Gimpler, Mele, Ford, Austin, Shepard and Roberts.

### B. Posse Comitatus Act

Plaintiff alleges that the use of military troops during the execution of a search warrant violated the Posse Comitatus Act.  18 U.S.C. § 1385 states that

> [w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

The Posse Comitatus Act thus prohibits the use of Army and Air Force personnel in local law enforcement activities.

1   Plaintiff's claim under the Posse Comitatus Act fails for two reasons.  First, Plaintiff has
2  offered no authority, and the Court is unable to find any, that suggests that there exists a private right
3  of action to enforce the Posse Comitatus Act.  Thus, Plaintiff may not bring a civil suit for monetary
4  compensation for an alleged violation of the Posse Comitatus Act.  The Posse Comitatus Act is a
5  criminal statute, the enforcement of which is generally left to the discretion of a prosecutor.  U.S.
6  v. Batchelder, 442 U.S. 114, 124 (1979).  The Court has no power to compel a U.S. Attorney to
7  prosecute Defendants for violation of the Posse Comitatus Act.

8   Second, though the statute explicitly prohibits the use of the Army or the Air Force, the
9  statute makes no mention of the use of members of a state's National Guards in local law
10 enforcement activities.  Other courts have held that state guardsmen are not part of the Army and the
11 Posse Comitatus Act does not prohibit the use of state National Guardsmen in local law enforcement
12 activities.  Clark v. U.S., 322 F.3d 1358, 1367 (Fed. Cir. 2003) ("The Act has been uniformly
13 interpreted to apply to National Guard members only when they are in federal service and not when
14 they are in service to their states"), U.S. v. Hutchings, 127 F.3d 1255, 1258 (10th Cir. 1997)
15 ("Guardsmen do not become part of the Army itself until such time as they may be ordered into
16 active federal duty by an official acting under a grant of statutory authority from Congress. . . .
17 Therefore a national Guardsmen's participation . . . does not constitute a violation of the [Posse
18 Comitatus Act]."), U.S. v. Benish, 5 F.3d 20, 25-26 (3rd Cir. 1993) (use of Pennsylvania National
19 Guard for civilian law enforcement did not violate Posse Comitatus Act).  Defendants' use of
20 California National Guardsmen in the execution of the search warrant against Plaintiff does not
21 violate the Posse Comitatus Act.

22  **C.   Claims Against Other Defendants**

23   Plaintiff's allegations against the remaining defendants are vague.  It is unclear what
24 Plaintiff's claims are against these defendants, or how these defendants participated in the above
25 claims.

26  **1.   Claims Against Defendants Rogers and Stanford**

27   Plaintiff alleges that Defendant Richard Rogers was the "Sheriff/Coroner for the County of
28 Tuolumne".  (Compl. 3.)  Plaintiff claims that Rogers was "legally responsible for the overall

8

operation of the Tuolumne County Sheriff's Department . . . including the "Activation" of the California National Guard and other Military Reservists". Plaintiff alleges that Defendant Lee Stanford "is now "Acting" Sheriff/Coroner for the County of Tuolumne and is/was [a part] of these allegations". (Compl. 3.) Plaintiff alleges that Defendants Rogers and Stanford were supervisory personnel in the Tuolumne County Sheriff's Department. However, it is unclear whether either defendant directly participated in the misconduct alleged by Defendant.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

It is unclear whether Rogers or Stanford personally participated in the alleged constitutional violations, knew of the violations and failed to prevent them, or implemented any policies that were so deficient that they were in themselves a repudiation of constitutional rights and were the moving force the constitutional violation. Rogers and Stanford are not liable merely for their supervisory positions over other Sheriff's Department officials that committed the constitutional violations. Plaintiff fails to state any claims against Defendant Rogers or Defendant Stanford.

### 2. **Claims Against P. T. Jones**

Plaintiff alleges that "P.T. Jones County Jail Commander is/was responsible for the actions of the T.C.S.D. "Jailers" and was to insure that Plaintiff's Rights were not Violated while "Held" in his Jail.

Plaintiff's allegations against Defendant Jones are vague. It is unclear what Jones did, or whether those actions amounted to a constitutional violation. It is unclear how Plaintiff's rights were violated while he was held in jail. Plaintiff fails to state any claims against Defendant Jones.

### 3. Claims Against Donald I. Segerstrom

Plaintiff alleges that Defendant Donald I. Segerstrom was the head district attorney of Tuolumne County. Plaintiff alleges that Segerstrom worked in concert with Defendants Blankenship and Davis to prosecute Plaintiff using "tainted evidence". Plaintiff alleges that Segerstrom maliciously prosecuted Plaintiff in retaliation for the monument on Plaintiff's property.

Plaintiff's allegations against Defendant Segerstrom are vague. It is unclear how Segerstrom worked with Blankenship and Davis, or whether he had any knowledge about the retaliatory purpose of the search warrants obtained against Plaintiff. Plaintiff does not allege that Segerstrom had knowledge that the story and evidence used to obtain the search warrants were concocted for retaliatory purposes. Further, Plaintiff does not allege that he was ultimately prosecuted for any crimes, what crimes he was prosecuted for, or whether Segerstrom had knowledge that Plaintiff did not commit any crimes. Plaintiff's imprecise allegations make it unclear whether Plaintiff is alleging that Plaintiff was actually prosecuted by Segerstrom, or whether Plaintiff is merely referring to Segerstrom's actions in obtaining the search warrants. Plaintiff fails to state any claims against Defendant Segerstrom.

### 4. Claims Against Amy Linbloum

Plaintiff alleges that Amy Linbloum is a "crime reporter" for a local newspaper. Plaintiff claims that Linbloum "tainted" the jury by writing false information given by law enforcement officials without properly investigating the facts. Plaintiff further claims that Linbloum was asked by Plaintiff's sister to hear Plaintiff's side of the story but refused.

It is unclear what Plaintiff's claim is against Defendant Linbloum. Section 1983 provides a remedy for the violation of rights by "persons acting under color of state law". It does not appear that Linbloum was acting "under color of state law" when working as a "crime reporter" for a local newspaper. Further, it is unclear what Plaintiff's cause of action against Linbloum is. Section 1983 provides a cause of action of the deprivation of rights under the Constitution or laws of the United

States. It is unclear how Linbloum, in her actions as a private crime report for a local newspaper, deprived Plaintiff of any rights under the Constitution or other law.

Plaintiff's allegations against Linbloum at most support a claim for the state law tort of libel. However, Plaintiff's libel claim against Linbloum is not factually or legally related to Plaintiff's 1983 claims against law enforcement defendants. Federal Rule of Civil Procedure 18(a) allows multiple claims against a single party and Federal Rule of Civil Procedure 20(a) allows multiple parties to be joined where the right to relief arises out of the same "transaction, occurrence, or series of transactions". An unrelated claim against a separate defendant belongs in a separate lawsuit. This is not only to avoid confusion, but also to ensure that prisoners pay the required filing fees and to prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[1] 28 U.S.C. § 1915(g). Thus, Plaintiff's unrelated libel claim against Defendant Linbloum may not be brought in the same lawsuit as his constitutional claims against separate law enforcement defendants.

**IV.   Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Earl, Bressler, Ditbetter, Gordon, Gimpler, Mele, Ford, Austin, Shepard and Roberts for retaliation against Plaintiff's exercise of his First Amendment rights and seizure of Plaintiff's property in violation of the Fourth Amendment. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will

///

---

[1] The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee unless they have previously filed three frivolous suits as a prisoner. 28 U.S.C. §1915(a),(g).

forward Plaintiff ten (10) summonses and ten (10) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

1      2.     Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

          a.     File an amended complaint curing the deficiencies identified by the Court in this order, or

          b.     Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Earl, Bressler, Ditbetter, Gordon, Gimpler, Mele, Ford, Austin, Shepard and Roberts for violation of the First and Fourth Amendments; and

     3.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:**   **September 21, 2009**           **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE